Peck, J.
The first question which arises upon the record is, whether, under the issues joined between the parties, the court below erred in admitting testimony of the partial deafness of Mrs. Terry, the plaintiff not proposing to show that the defendant knew of her deafness at the time the injury was inflicted. It is clear, we think, that without such knowledge on the part of defendant, the unfortunate condition of Mrs. Terry would not impose upon the defendant or its agents, any increased degree of care; and such seems to have been the matured opinion of the court below; for in its charge to the jury, the court expressly say, that such deafness could not enhance the responsibilities of the defendant, unless a knowledge of the fact should be brought home to it. The answer of the company denies the negligence imputed to its agents, and insists that the injury to Mrs. Terry was the result of her own want of care, etc. And it is quite probable that when the testimony was offered, it may have been supposed that, without such knowledge, Mrs. Terry’s condition reflected upon the degree of care to be exercised by the defendant below or its agents; but if the evidence was competent and *580 admissible on any other ground, though not for that purpose, the failure of the plaintiff to disclose the true ground, would not have authorized its rejection.
The issues before the jury involved the question of the exercise of ordinary care and prudence, on the part of Mrs. Terry, and also of the railroad officers. The solution of these questions depends upon ■ the .-peculiar facts and circumstances of each case, the state and condition of the parties,'the manner in which, and the circumstances under which, the injury was received or inflicted; in short, all the circumstances surrounding the transaction, which in any way reflect upon either the degree of care or the manner in which, in the particular case, it should have been exercised. The circumstances are all relevant, and may be given to the jury. The effect which they should have upon the jury, is another and very different question. They form, so to speak, a part of the res gesta of the transaction; they are the circumstances under which it occurred, and indicate the agencies which caused it, and should not, therefore, be excluded; but the coux*t -trying the cause, should, so far as practicable, see that undue weight is not attached to them by the jury.
There was not, then, in our judgment, any error in the admission of the testimony, in regard to the deafness of Mrs. Terry.
Did the court below err in refusing to give the instructions asked by the plaintiff in error, as to the effect of Mrs. Terry’s deafness — -“that that circumstance (if proved) would throw upon her the necessity of a more cautious exercise of the faculties she was possessed of; ” or in refusing to instruct them u that if the wife of the plaintiff (below) had so muffled up her face as-to prevent her from seeing with accuracy, at the time she was cx’ossing the track of the defendant, her responsibilities would be thereby increased?”
Both parties — the railroad company and Mrs. Terry— were bound — the one in running their cars, and the other *581 in crossing the track — to the observance of ordinary care and prudence, in order to prevent an injury to either.
If the party sued acted with ordinary care and prudence, or if both parties were guilty of negligence — that is, a want of ordinary care and prudence — contributing directly to the injury, no recovery can be had. In the first case, the defendant has fulfilled all the obligations which the law imposed upon it; and in the last, both parties are in fault, and the damages could not be apportioned.
The jury, in this case, by their verdict, found the defendant below guilty of culpable negligence in the conduct and management of their train, and this would entitle the plaintiff below to a verdict and judgment, unless Mrs. Terry was also guilty of culpable negligence, contributing to the injury.
What, then, is meant by ordinary care and prudence, the observance of which exonerates a party, in case of accident, and the absence of which, in this class of cases, is termed negligence, and renders a party liable ?
Ordinary care is not defined in the charge copied in the bill of exceptions, but it is well known to mean that degree of care which persons of ordinary care and prudence are accustomed to use and employ, under the same or similar circumstances, in order to conduct the enterprise in which they are engaged to a safe and successful termination, having due regard to the rights of others and the objects to be accomplished.
It is obvious from this definition, that the ordinary care required by the rule, has not only an absolute, but also a relative signification. It is to be such care as prudent persons are accustomed to exercise, under the peculiar circumstances of each case. If called into exercise under circumstances of peculiar peril, a greater amount of care is inquired than where the circumstances are less perilous; because prudent and careful persons, having in view the object to be attained, and the just rights of others, are, in such cases, accustomed to exercise more care than in cases *582 less perilous. The amount of care is indeed increased, but the standard is still the same. It is still nothing more than ordinary care under the circumstances of that particular case. The circumstances, then, are to be regarded in determining whether ordinary care has been exercised.
And in the case at bar, in determining whether Mrs. Terry, in the cases referred to in the 5th and 6th instructions asked, did conduct herself with ordinary care and prudence, in attempting to cross the railroad track at the time of the accident, the question to be solved by the court and jury may be stated thus: Would persons of ordinary prudence and capacity, partially deaf, but conscious of that infirmity, and with her head so muffled as to prevent her seeing with accuracy, attempt to cross the track at the time, and under the circumstances, when she made the attempt ? Her partial deafness, and the fact, if true, that her head was so muffled with a veil as to prevent her seeing with distinctness, are as much part of the circumstances under which the attempt was made, as the time when it was attempted, and the fact that the up’ train was then momentarily expected. They formed a portion of the circumstances, which are to graduate the effort and determine whether ordinary care was exercised by her.
Much unnecessary embarrassment and complication is thrown about the question of the relative duties and responsibilities of the parties receiving and inflicting injuries, by losing sight of this distinction between the amount, and the degree or hind of care to be exercised in each particular case.
Such being the rule, as to the duties and responsibilities of the party injured by an accident, where the other party is in fault, did the court err in refusing to charge the jury, that, under the fifth instruction asked, Mrs. Terry’s partial deafness ■ “ would throw upon her the necessity of a more cautious exercise of the faculties she was possessed of or, under the sixth instruction asked, “ that if Mrs. Terry’s face was so muffled up as to prevent her seeing with accu *583 racy at the time she was crossing the track, that, fact would increase her responsibilities ? ”
The circumstances alluded to in these instructions, were in evidence before the jury, and were claimed as proved by the plaintiff; and, as we have already seen, were circumstances proper for the consideration of the jury, in determining whether due care had been observed by Mrs. Terry.
The instructions, it is true, especially the sixth, claim that, by reason of the facts stated, Mrs. Terry’s responsibilities were increased; but it is obvious from the whole series of instructions asked, especially the 4th and 6th, and the responses of the court, and at the same time giving to the bill of exceptions a reasonable and not hypercritical construction, that it was not claimed by the defendant below, nor understood by the court as claimed by defendant, that anything more than ordinary care, in its legal sense, was in any event required of Mrs. Terry.
The fifth instruction docs not, perhaps, even in terms, assert any increase of responsibility; it being, merely, that a partial paralysis of one sense, requires a more cautious exercise of those which remain, in order to avoid injury; and, therefore, in no sense enlarges the obligation of Mrs. Terry to the exercise of anything more than ordinary care.. It is to be borne in mind that the court below, while they had laid down the rule, that reasonable care to avoid the injury, was required of Mrs. Terry, did not, in any portion of the charge set forth in the bill of exceptions, define what would be reasonable care, nor allude to the fact, that it is relative in its character, and dependent on the particular circumstances. The evidence of partial deafness, and the obscuration of vision through the agency of the double veil, were before the jury, neither of which, under the charge of the court, increased the responsibilities of the plaintiff in error; and it was therefore of much importance for the jury to know it could not, in law, limit or qualify *584 the obligation of Mrs. Terry to exercise ordinary care and prudence to avoid injury, as hereinbefore explained.
It is claimed, however, that the court might rightfully refuse to give the charges asked, because they had too wide a scope, no limit being affixed to the extent of the requirement of “ a more cautious exercise of her (remaining) faculties,” in the fifth, and the “ increase ” of her responsibilities in the sixth; so that the charges asked, reached extraordinary as well as ordinary care, and therefore claimed too much.
We have already had occasion to remark, that the bill of exceptions is to receive a reasonable, and not a hypercritical construction; that the series of instructions asked should be taken together; and it is apparent from the 4th ánd 7th instructions asked and given, that the degree of care contemplated in the series, and understood by the court, was merely ordinary care under the circumstances. And the general terms ■ employed in those instructions should be regarded as limited to the exercise by Mrs. Terry of ordinary care, in its legal sense.
Again, it is claimed that the question, of whether there was negligence on the part of Mrs. Terry, is a question of fact upon which the court cannot be required to express an opinion, and was, therefore, very properly left, without comment, to the jury. •
Upon this question there is some diversity in the authorities. See them collected and commented on in Pierce on Railways 283-4, and Redfield on Railways 333, et seq.
The better rule is, probably, that stated in Trow v. Vermont Central R. R. Co., 24 Verm. Rep. 497: “The question of negligence is a mixed question of law and fact, típón which, if askedj it is the duty of the court specifically to instruct the jury; and where the facts in the case are admitted, or where there is evidence tending to prove the facts, it is (ordinarily) the duty of the court, if requested, to instruct the jury whether the facts admitted or found *585 to be true, constitute (sucb) negligence as will defeat the action.”
It is not perhaps necessary to decide this somewhat vexed question. The court had not defined what, in law, was meant by ordinary care; the facts alluded to wei’e in evidence, and, as we have seen, reflected upon the extent of ordinary care in that case — they were á part of the circumstances under which the injury to Mrs. Terry was inflicted and received; and, in the absence of any instruction, that in determining the question of ordinary care, the jury were to look to all the circumstances surrounding the transaction, it is very clear, we think, that the defendant below might require of the court to instruct the jury as to the effect of those circumstances, if established, upon the question of ordinary care.
There is a class of cases to be found in the books, where persons of unsound mind, or of immature age, and who, from their infancy, or insanity, are incapable of properly estimating the danger and avoiding the injury, have been injured by the negligence of others, in which the courts have arrived at different and inconsistent results. Some holding that no recovery can be had in such cases, if their conduct would have amounted to negligence in an adult of ordinary intelligence and capacity; while a recovery has been permitted in other tribunals, on the same or a similar state of facts. See cases cited in Pierce on Railways 278, et seq. And it is sought to assimilate the disability of Mrs. Terry to those cases which allow a recovery, and claim a right to recover, because she was disabled from hearing the approach of the cars; and not, therefore, chargeable with negligence.
It is a sufficient answer to say, that even if the cases which allow a recovery for negligence for injuries inflicted upon persons of unsound mind or tender years, irrespective of the negligent conduct of such persons, be sound law— and as to which we do not now express any opinion — they can have no just application to the case at bar, where the *586 person injured was of mature age and presumed sanity and capacity. In the case of a person of unsound mind., or of tender years, tbe recovery is allowed because, not being possessed of capacity and intelligence to properly apprehend tbe peril and adopt measures to avoid it, negligence cannot justly be imputed to them; while Mrs. Terry was of mature age, and, for aught that appears in the bill of exceptions, in the full possession of all her mental faculties —competent to truly estimate the peril, and to determine the proper’ means of avoiding the danger. The reason, then, which authorized the exception in the one case, does not arise in the other.
The other error assigned, that the court declined to instruct the jury to find a special verdict, has not been argued, and I presume is, not insisted upon by the counsel for plaintiff in error. It is sufficient to say, that the right of the court to direct a special verdict is discretionary (sec. 276 of code of civil procedure), and the refusal to •do so cannot be assigned as error.

Judgment reversed and cause remanded.

Brinkerhoff, Scott and Sutliff, XT., concurred.
Swan, C. X, did not sit in the case.